IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**DUSTEE M.,**

      **Plaintiff,**

v.                                                              No. 23-cv-00610 JHR

**MARTIN O'MALLEY,**
**Commissioner of Social Security,**

      **Defendant.**

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION [DOC. 14] AND REMANDING FOR FURTHER PROCEEDINGS**

Before the Court is Plaintiff Dustee M.'s Brief, which is effectively a motion to reverse and remand. [Doc. 14]. The Commissioner filed a response [Doc. 18] and Plaintiff replied [Doc. 19]. Pursuant to 28 U.S.C. § 636(c) and Rule 73(b), the parties consented to Magistrate Jerry H. Ritter resolving Plaintiff's challenge to the Commissioner's final decision on her application for Social Security benefits and entering final judgment in this appeal. [Doc. 4]. Having reviewed the parties' briefing and the Administrative Record, the Court find that Plaintiff's arguments warrant remand and therefore the Court **GRANTS** Plaintiff's Motion and **REMANDS** the matter for further administrative proceedings.

      **I.**       **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff applied for disability insurance benefits on December 3, 2019. AR at 28. Her claim was initially denied on May 1, 2020, and upon reconsideration on July 6, 2021. *Id.* Administrative Law Judge ("ALJ") Michael Leppala held a telephonic hearing on August 31, 2022, attended by Plaintiff, her attorney, and an impartial vocational expert. *Id.* The ALJ issued his decision denying

benefits on November 21, 2022. AR at 43. The Appeals Counsel denied review, making the ALJ's decision the final decision of the Commissioner for judicial review. [Doc. 18, p. 2] (citing AR 1-6).

Plaintiff had previously worked as an "Educational Aide", "Night Club Dancer," and "Coffee Server." [Doc. 14, p. 4]. Plaintiff said the beginning of her health problems was "extreme fatigue" stretching back to 2019. AR at 59. She testified that muscle twitching, migraines, pain, and memory problems followed, which caused her to stop working. *Id.* She tried gabapentin, physical therapy, talk therapy, and some anti-seizure medication. AR at 59–61. She further testified to having pain every day with varying intensity depending on her activity and stress level. She described the pain as "stabbing," "burning," and "aching" mainly located in her lower back, neck, knees, ankles, hands, and feet. AR at 62. She maintained the pain, fatigue, and associated mental health issues "ruin[ed] her life" because she had to stop working and going to school. AR at 64. She stated she was diagnosed with fibromyalgia about ten years ago. AR at 65. She testified that her conditions have substantially worsened since 2019. AR at 70.

## II.     THE COMMISSIONER'S FINAL DECISION

A claimant seeking disability benefits must establish that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The Social Security Administration must apply a five-step analysis to determine eligibility for benefits. 20 C.F.R. § 404.1520(a)(4).[1]

*Steps 1 and 2*

At Step 1 of the sequential analysis, the ALJ found Plaintiff met the insured status requirement of the Social Security Act. AR at 30. At Step Two, the ALJ found that Plaintiff had

---

[1] These steps are summarized in *Allman v. Colvin*, 813 F.3d 1326, 1333 n.1 (10th Cir. 2016). Regulations for determining whether a claimant is disabled for purposes of for both DIB and SSI are identical but are nonetheless codified in two separate parts of the Code of Federal Regulations. Part 404 of Title 20 governs DIB while Part 416 governs SSI. The Court cites only the applicable regulations in Part 404, but the analogous regulations in Part 416 apply as well.

severe impairments of fibromyalgia, degenerative disc disease, straightening of the cervical lordosis, anxiety, attention-deficit hyperactivity disorder, depression, and neurocognitive disorders. AR at 31. He also found several non-severe impairments. *Id.* The ALJ stated he considered all these severe and non-severe impairments when later formulating Plaintiff's residual functional capacity ("RFC"). AR at 32.

*Step 3*

At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments meeting or medically equaling the severity of a listed impairment. *Id.* The ALJ evaluated Plaintiff's claimed mental impairments under the "paragraph B" criteria. *Id.* The ALJ found that Plaintiff had moderate limitations in all four categories: (1) understanding, remembering, and applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. AR at 32–33. He found that Plaintiff's mental impairments did not satisfy the paragraph B criteria because the impairments "did not cause at least two 'marked' limitations or one 'extreme' limitation." AR at 33.

*Residual Functional Capacity*

When a claimant does not meet a listed impairment, the ALJ must determine the claimant's residual functional capacity. 20 C.F.R. § 404.1520(e). Residual functional capacity ("RFC") is a multidimensional description of the work-related abilities a claimant retains despite his impairments. 20 C.F.R. § 404.1545(a)(1). It "does not represent the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8p at *Definition of RFC* (emphasis added). The ALJ determined that Plaintiff could perform light work with limitations:

> I find that, through the date last insured, [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she was capable of occasionally lifting and/or carrying 20 pounds, frequently, lifting and/or carrying ten pounds, standing and/or walking for about six hours in an eight-hour

3

> workday, and sitting for about six hours in an eight-hour workday, all with normal breaks. She was limited to occasionally climbing ramps or stairs, never climbing ladders, ropes, or scaffolds, occasionally stooping, kneeling, crouching, and crawling. [Plaintiff] must avoid all exposure to unprotected heights, dangerous machinery, and moving machinery. *[Plaintiff] could understand, carry out, and remember simple instructions and make commensurate work-related decisions; respond appropriately to supervision, coworkers, and work situations; deal with occasional changes in work setting; and maintain concentration, persistence, and pace for up to and including two hours at a time with normal breaks throughout a normal workday.* She was limited to occasional interaction with coworkers, supervisors, and the general public.

AR at 33, 34 (emphasis added). The ALJ reached these conclusions after considering all of Plaintiff's symptoms and the consistency of those symptoms with all record evidence, medical or otherwise as required by 20 C.F.R. §§ 404.1520c, 404.1529, and SSR 16-3p. AR at 34. The ALJ followed the two-step process for assessing Plaintiff's symptoms. *Id.* The first step is determining whether an underlying medically determinable physical or mental impairment exists that could reasonably produce Plaintiff's symptoms. *Id.* The second step is evaluating the intensity and limiting effects of the symptoms to determine the extent they limit work-related activities. AR at 15.

The ALJ recounted Plaintiff's alleged inability to work because of a combination of fatigue, muscle twitches, headache, generalized pain, and memory loss. AR at 34. He found that Plaintiff's impairments could cause the alleged symptoms, but that her statements regarding their intensity, persistence, and limiting effects "are not entirely consistent with the medical evidence and other evidence in the record." *Id.* The ALJ supported this conclusion by discussing the various opinions and evidence bearing upon Plaintiff's alleged impairments. AR at 35–41.

The ALJ first discussed the evidence surrounding Plaintiff's claims of musculoskeletal issues and pain. AR at 35. Plaintiff saw a rheumatologist in 2013 and 2014. *Id.* The rheumatologist

4

found her positive ANA test[2] clinically insignificant and recommended physical therapy and medication. *Id.* Nurse practitioner Singleton also regularly treated Plaintiff for pain, fatigue, anxiety, and depression and reported that Plaintiff met a fibromyalgia diagnoses. AR at 35. She thus referred Plaintiff to several specialists. *Id.*

The ALJ recounted Plaintiff's visits to an orthopedist, a neurologist, and a second rheumatologist. AR at 35–36. The orthopedist recommended an MRI of the lumbar spine. *Id.* The neurologist reported normal mental status exams and characterized her muscle twitches as "benign idiopathic fasciculations." AR at 35. The second rheumatologist, Dr. Beg, assessed Plaintiff for chronic pain and positive ANA. *Id.* Dr. Beg noted small canker sores in Plaintiff's mouth and "slight redness" on her upper chest in response to mouth sores and skin rash complaints. *Id.* Her neurological exam was normal. AR at 36.

Dr. Beg also assessed Plaintiff's "low titer positive ANA and dsDNA" *Id.* at 36. Dr. Beg determined Plaintiff "did not have any convincing evidence of systemic lupus erythematosus currently" but recommended further workup. *Id.* She urged Plaintiff to begin aerobic exercise, take vitamin D supplements, and discuss nerve pain medication with her primary care provider (though Plaintiff did not want to take medication). *Id.* Plaintiff's blood work was normal. *Id.* Plaintiff also saw a cardiologist and the resulting echocardiogram was unremarkable. *Id.*

Thereafter, the ALJ noted that Plaintiff returned to the orthopedist for back pain. *Id.* Physical examination largely was normal so the orthopedist recommended another MRI and water

---

[2] The term "ANA" stands for antinuclear antibodies whose presence in the blood indicate that the immune system "has launched a misdirected attack on your own tissue—in other words, an autoimmune reaction." ANA test, *Overview*, Mayo Clinic (August 17, 2022), https://www.mayoclinic.org/tests-procedures/ana-test/about/pac-20385204. However, ANA tests are sometimes viewed as blunt tools to detect an autoimmune response such that "some people have positive ANA tests even when they're healthy." *See id.* The ALJ discusses Plaintiff's "clinically insignificant" and "low titer positive ANA and dsDNA" test in this context. AR at 35, 36.

therapy. *Id.* Plaintiff did not complete physical therapy beyond the evaluation, and her back and brain MRIs were "largely unremarkable." *Id.*

The ALJ also considered the opinions on Plaintiff's mental impairments. AR at 37–39. Plaintiff saw Jill Ryan, Ph.D. to assess her cognitive and psychological functioning based on a history of learning disabilities, difficulty multi-tasking, and "diminished resilience." *Id.* Dr. Ryan noted Plaintiff had been enrolled at the University of New Mexico but dropped out because of her health problems. *Id.* She documented that Plaintiff appeared groomed and neat though fatigued with a flat voice. *Id.* She responded to testing but repeated instructions and "worked slowly." *Id.* Dr. Ryan diagnosed several mental disorders due to "brain dysfunction and physical disease": fibromyalgia, mood disorder due to physiologic conditions, and major depressive disorder. *Id.* Comparing her current and prior results from six years ago, Dr. Ryan noted that Plaintiff's IQ remained stable though her executive functioning and memory had declined to the "borderline-deficient range." *Id.* Dr. Ryan thought Plaintiff's fibromyalgia was the "predominant medical condition" affecting cognition. AR at 38. At a follow-up visit Dr. Ryan diagnosed attention deficit hyperactivity disorder, fibromyalgia, lupus erythematosus, sleep disorder, organic mood disorder, memory loss, and mental confusion. AR at 38.

The ALJ noted Plaintiff "attended weekly psychotherapy treatment since May 23, 2018," per her therapist LCSW Carol Watts. *Id.* Watts's reported areas of focus were "increasing financial and housing stability, reduction of depression and stress, difficulty with focus and concentration, and addressing the impact of and follow up needed for various medical issues." *Id.* Watts stated that Plaintiff was "often clearly in a lot of pain"; eventually, Plaintiff stopped attending therapy due to "overwhelming" cognitive, life, and medical concerns. *Id.* In 2020, Dr. Ryan assessed an overall functional decline to include memory, pain level, speech, and appearance. *Id.* Plaintiff's

memory and processing scores declined accordingly, and per Dr. Ryan, it was thus "understandable why she could not complete the coding class she recently attended." AR at 38–39.

The ALJ found that Plaintiff's "wide range of activities" indicated her ability to "perform unskilled light work." AR at 39. The ALJ cited Plaintiff's various hobbies, jobs, and outings found in the record. *Id.* These included homeschooling, going out with friends, cleaning, baking, researching starting a business, going to a concert, touring a college, and taking online classes. *Id.* The ALJ noted her precarious financial situation, cognitive obstacles, and limited energy held her back from acting on her ideas, completing coursework, and exercising. *Id.*

The ALJ then assessed the medical opinions of treating and consulting providers. AR at 40–42. He first discussed the opinions of State agency medical consultants Drs. (M.D.) Metcalf, Meites, Fleming, and Yoakam, which all found Plaintiff could do a full range of light exertion. AR at 40. The ALJ found these opinions partially persuasive because physical examinations supported full light work, but Plaintiff's "ongoing subjective complaints" supported the RFC's postural and environmental limitations. *Id.*

The ALJ then addressed the opinions of State agency psychological consultants Drs. (Ph.D.) Rolison, Eckert, McGaughey, and Jannsen. *Id.* Drs. Rolison and Eckert opined that Plaintiff "could perform simple and some complex tasks; relate to others on a superficial work basis; adapt to a work situation; and relate to the public for work related issues." *Id.* Drs. McGaughey and Jannsen found that Plaintiff "had some moderate limitations including the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." *Id.* Drs. McGaughey and Jannsen moreover found Plaintiff could do "simple, routine, repetitive tasks with incidental interpersonal contact and direct/concrete supervision." *Id.*

> The ALJ accordingly found:
>
> The administrative mental findings are partially persuasive. Although these doctors did not examine [Plaintiff], they are trained in evaluating Social Security disability claims, reviewed the evidence that was made available to them at the initial and reconsideration levels of review, and made reasonable, well-supported conclusions based on that evidence. *The findings of Dr. McGaughey and Dr. Jannsen of capacity for a range of unskilled work is more persuasive than those of Dr. Rolison and Dr. Eckert for a range of semi-skilled work, as better supported by the explanations and more consistent with Dr. Ryan's April and May 2018 evaluation (4F)*.

*Id.* (emphasis added).

The ALJ next assessed Dr. Ryan's opinions. AR at 40–42. Regarding Dr. Ryan's opinion that Plaintiff had a poor prognosis for returning to functional levels allowing work or school, the ALJ found "[t]hese opinions are not persuasive because they do not address specific work-related functional limitations." AR at 40. The ALJ discredited Dr. Ryan's opinions on several bases. AR at 41. He concluded that neuropsychological evaluations did not support finding that Plaintiff's condition had declined. *Id.* In that regard, the ALJ discounted Dr. Ryan's marked limitation in understanding and remembering simple instructions or tasks as inconsistent with Plaintiff's IQ score. *Id.* The ALJ also found Dr. Ryan's findings inconsistent with "the essentially normal physical and mental findings of the neurologist . . . and the rheumatologist." *Id.*

After considering all the medical opinions in the record, the ALJ concluded that the totality of the evidence supported his RFC finding. *Id.* The ALJ noted that Plaintiff's moderate mental impairments were accounted for by the RFC's limitation to "a range of unskilled work." *Id.* The ALJ also compared the moderate mental impairment findings from Step 3 with the corresponding function-specific RFC limitations. AR at 41–42.

8

*Steps 4 and 5*

At Step 4, the ALJ found that the RFC precluded Plaintiff from performing her past relevant work. AR at 42. At Step 5, the ALJ found that "there were jobs that existed in significant numbers in the national economy" which Plaintiff could perform. *Id.* The ALJ concluded this after consulting with a vocational expert: "I asked the vocational expert whether jobs existed in the national economy for an individual with [Plaintiff's] age, education, work experience, and [RFC]." AR at 43. The vocational expert responded that given these factors, Plaintiff could fulfill the requirements of three jobs: (1) "Merchandise Marker, light, SVP 2, DOT No. 209.587-034" (125,000 jobs exist); (2) "Small Products Assembler, light, SVP 2, DOT No. 706.684-022" (21,000 jobs exist); (3) "Assembler, Production, light, SVP 2, DOT No. 706.687-010" (62,000 jobs exist). AR at 43. Therefore, the ALJ ultimately found that Plaintiff was not disabled under the Social Security Act. *Id.*

### III.  LEGAL STANDARDS

The Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). The Commissioner's findings are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, requiring more than a scintilla but less than a preponderance. *See* 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A decision is not based on substantial evidence if it is overwhelmed by other record evidence. *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014).

9

"Failure to apply the correct legal standard or to provide [the Court] with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Crawford v. Saul*, 487 F. Supp. 3d 1021, 1026 (D. Colo. 2020) (first citing *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984); and then *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993)).

The RFC's function-by-function assessment considers what type of work is appropriate by evaluating all evidence, of an individual's ability to perform work-related activities, including medical and administrative opinions. *See Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014) (citing SSR 96–8p, 1996 WL 374184, at*3); *see also* POMS DI 24510.006 (Assessing Residual Functional Capacity (RFC) in Initial Claims). Step 5 also utilizes a function-by function analysis in the form of a hypothetical question to a vocational expert to determine whether the claimant can perform any other jobs of significant numbers in the national economy. SSR 96-8P (S.S.A. July 2, 1996); *see Rivera v. Berryhill*, 242 F. Supp. 3d 1226, 1237 (D.N.M. 2017).

In the social security context, terms such as "unskilled work" and "semi-skilled work" are terms of art. *Atwood v. Colvin*, No. 215CV00431RJSBCW, 2017 WL 899892, at *2 (D. Utah Mar. 7, 2017) (citing 20 C.F.R. §§ 404.1568). Regulations define unskilled work in relevant part as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). By contrast, semi-skilled work is "work which needs some skills but does not require doing the more complex work duties," though such jobs are "more complex than unskilled work." *Id.* § 404.1568(b).

## IV.    ANALYSIS

**A. The ALJ erred by failing to explain his reasoning for finding the administrative mental opinions partially persuasive.**

1. Parties' Arguments

Plaintiff's challenge to ALJ's "occasional" interpersonal contact limitation stems from his treatment of the agency psychological consultants' opinions. Plaintiff makes three specific arguments for error. [Doc. 14, p. 8]. First, she argues that the RFC should have included the limitation to "incidental interpersonal contact" from Dr. McGaughey's and Jannsen's persuasive opinion and the ALJ failed to explain why he did not include it. *Id.* Plaintiff thus reasons the RFC is not supported by substantial evidence. *Id.* Second, Plaintiff contends the ALJ failed to assess the supportability and consistency of medical evidence of Plaintiff' work and social limitations *Id.* Third, Plaintiff says that the ALJ erred by posing to the vocational expert at Step 5 a "flawed hypothetical" absent all precise functional limitations. *Id.* The Commission responds with a litany of evidence reflecting Plaintiff's medical problems to show substantial evidence supporting the ALJ's decision. [Doc. 18]. The Commissioner also contends that the ALJ did not have to discuss his reasons in the exact order in which he addressed each opinion. *Id.* at 14.

2. Relevant Law

Social Security Rule 96-8p requires the RFC to "include a narrative discussion describing how the evidence supports *each* conclusion" citing specific medical and non-medical evidence. SSR 96-8P (S.S.A. July 2, 1996) (emphasis added). Courts in this circuit have repeatedly enforced this requirement and remanded when the ALJ does not comply. *See, e.g.*, *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) ("Most importantly, the ALJ's RFC assessment must include a narrative discussion describing how the evidence supports each conclusion."); *Panas on behalf of*

*M.E.M. v. Comm'r, SSA,* 775 F. App'x 430, 438 (10th Cir. 2019) ("[T]he ALJ assigned each of these doctors' opinions 'significant' weight. But the ALJ did not explain how the 'significant' weight he afforded [consulting physician] Dr. Lang's opinion supported a determination that M.E.M.'s limitations in this domain were less than 'marked' . . . we remand for the ALJ to include this explanation."). Indeed, this Court has recently enforced this requirement*:*

> ALJs must provide reasoning and evidence for each finding (42 U.S.C. § 405(g)) and the Court must be able to determine from that reasoning whether correct legal principles were followed. *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). Further, the ALJ's reasoning must stand on its own merits because the Court will not consider or provide post-hoc justifications. *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008).

*Hawkins v. Kijakazi*, No. 1:20-CV-01259 JHR, 2022 WL 17729918, at *7 (D.N.M. Dec. 16, 2022).

These cases emphasize that the lynchpin of this articulation requirement is whether the ALJ explains his opinion in enough detail for a court to "meaningfully review" whether substantial evidence supports the RFC. *See, e.g.*, *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) ("We must remand because we cannot meaningfully review the ALJ's determination absent findings explaining the weight assigned to the treating physician's opinion"); *Southard v. Barnhart*, 72 F. App'x. 781, 784 (10th Cir. 2003); *Spicer v. Barnhart*, 64 F. App'x 173, 177–78 (10th Cir. 2003). Without such explanation, remand is proper because a court "cannot simply presume the ALJ applied the correct legal standards" without improperly substituting its own judgment. *Watkins,* 350 F.3d at 1301. The Court views this requirement as more critical under the new regulations directing the ALJ not to defer or give specific evidentiary weight to any medical opinion or administrative finding. *See* 20 C.F.R. § 416.920c. Without an evidentiary hierarchy, the Court must depend entirely on the ALJ's explanations to review for substantial evidence, and thus it is more imperative that the ALJ explain his reasoning in detail. *See id.* (directing the ALJ to

12

evaluate all medical and administrative opinions with a series of factors, most importantly supportability and consistency).

    3. Application

Here, the ALJ disregarded this analysis and failed to adequately explain his reasons for the weight he gave the administrative mental opinions, which he globally found "partially persuasive." AR at 40. Reconsideration-level psychological consultants' Drs. Rolison and Eckert opined that Plaintiff could "perform simple and some complex tasks; relate to others on a superficial work basis; adapt to a work situation; and relate to the public for work related issues." AR at 40. The ALJ characterized this as finding "for a range of *semi-skilled work*." *Id.* (emphasis added). In relevant part, psychological consultants' Drs. McGaughey and Jannsen opined on the current application that Plaintiff "was able to perform simple, routine, repetitive tasks with incidental interpersonal contact and direct/concrete supervision." *Id.* The ALJ interpreted this as finding a "capacity for a range of *unskilled work*." *Id.* (emphasis added).

The ALJ found Drs. McGaughey's and Jannsen's findings "more persuasive" that Drs. Rolison's and Eckert's findings. *Id.* To explain this choice, the ALJ simply declared that Drs. McGaughey's and Jannsen's unskilled work findings were "better supported by the explanations and more consistent with Dr. Ryan's April and May 2018 evaluation (4F)" than the semi-skilled work findings. *Id.* Aside from this statement, the ALJ provides no other context or reasoning which would enable the Court to understand this finding. For example, he does not explain which "explanations" he finds problematic and which he finds convincing. Nor does he analyze or compare Drs. Rolison's and Eckert's opinions against those of Drs. McGaughey and Jannsen; in fact, he does not articulate any specific reason for discounting Drs. Rolison's and Eckert's opinions. Nor does he specify or reference which portions of Dr. Ryan's evaluations are consistent

13

with unskilled work. Nor does he cite any other evidence in the record, aside from generally citing Dr. Ryan's evaluation (4F).

The ALJ's conclusory statement finding Drs. McGaughey's and Jannsen's unskilled work limitations "more persuasive" because they purportedly reflect the content of a generally referenced evaluation does not satisfy SSR 96—8p. Although the ALJ weaves buzzwords relating to the supportability and consistency factors into his one-sentence explanation, this attempted substitute analysis falls short of a "narrative discussion describing how the evidence supports each conclusion." SSR 96–8p; *See* 20 C.F.R. § 416.920c. It is conclusory and invites the Court to speculate. In sum, the Court is unable to meaningfully review the ALJ's reasons for finding the opinions endorsing unskilled work more persuasive than those finding semi-skilled work. The Court will not supply its own logic to fashion ex-post facto reasons.

Finally, the Commissioner's response did not cure this omission. Accordingly, the Court will not address Plaintiff's argument regarding "occasional" versus "incidental" social contact because this issue logically depends on resolution of the first, i.e., knowing why the ALJ found the opinion for "simple, routine, repetitive tasks with *incidental interpersonal contact*" persuasive. *See* AR at 40 (emphasis added).

**B. The ALJ's failure to explain his opinion is not harmless error and requires remand.**

The ALJ's failure to adequately explain his reasoning is fatal to his decision. Before reversing and remanding, the reviewing court must first consider whether the ALJ's error is harmless. *See Crawford*, 487 F. Supp. 3d at 1026. An error is harmless "where it is 'inconceivable' that a different administrative conclusion would have been reached absent the error." *Id*. (internal citation omitted). As stated above, an ALJ's findings must clearly communicate what weight the

ALJ gave a medical opinion and explain the specific reasons for that weight. *Id.* (citing *Langly v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004)).

Consequently, "it is more than merely helpful for the ALJ to articulate reasons (e.g., lack of credibility) for crediting or rejecting particular sources. It is **absolutely essential** for meaningful appellate review," and absent such articulation, reversal is proper. *Id.* (internal citation and quotation omitted). By contrast, "merely technical omissions in the ALJ's reasoning" do not warrant reversal. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

The ALJ's failure to explain the reasons for his psychological consultant findings is not excusable as "merely technical." The Court presently lacks the "absolutely essential" knowledge of why the ALJ deemed the unskilled work findings persuasive and disposed of the semi-skilled work findings. The Court thus is unable to fulfill its obligation to meaningfully review the ALJ's "partially persuasive" finding on the administrative mental opinions generally or the findings of a particular psychological consultant. This erodes substantial evidence supporting the RFC. *See Southard*, 72 F. App'x. at 784.

Furthermore, this analytical gap precludes the Court from ensuring that the Step 5 hypothetical accounted for all RFC limitations and exertional categories. Because the vocational expert relies on a hypothetical incorporating RFC limitation to inform the ALJ whether viable jobs exist and thus preclude a disability finding, the ALJ's error is not harmless. *See* SSR 96-8P (S.S.A. July 2, 1996). Thus, remand is required to ascertain the ALJ's reasons for his administrative mental findings and their effect on the RFC. This missing analysis is critical to the Court's consideration of Plaintiff's chief argument concerning a limitation to "occasional" versus "incidental" interpersonal contact.

## V. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Brief [Doc. 14] requesting reversal and remand to the agency for further administrative proceedings is hereby **GRANTED.**

**IT IS SO ORDERED.**

_____
JERRY H. RITTER
UNITED STATES MAGISTRATE JUDGE